UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GREGORY SMITH,

                              Plaintiff,               18-CV-7018 (AT) (OTW)

            -against-                   **REPORT & RECOMMENDATION**

NYC DEPARTMENT OF CORRECTIONS, et al,

                             Defendants.
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**TO THE HONORABLE ANALISA TORRES, United States District Judge,**

**I.**    **Introduction**

Plaintiff Gregory Smith, proceeding *pro se*, brings this §1983 suit against the City of New York ("the City"), the Warden of North Infirmary Command ("the Warden"), and Securus Technologies, Inc. ("Securus") for failure to timely attend to a broken phone casing in his prison facility. While using that phone, Plaintiff cut himself on a sharp piece of exposed metal, leaving a "deep gash" in Plaintiff's finger. First Amended Complaint ("Compl.") (ECF 10) at 3. Plaintiff alleges that Defendants' failure to provide a safe environment for using the phone constitutes a violation of his constitutional rights under the First, Eighth, and Fourteenth Amendments, entitling him to compensatory and punitive damages. Defendants Securus and the City both filed Motions to Dismiss. (ECF 15, 18). For the reasons described below, I recommend that both motions be **GRANTED** in their entirety.

1

## II. Background

Plaintiff is currently incarcerated in North Infirmary Command at Rikers Island. Compl. at 1. Plaintiff alleges that on July 9, 2018, he was using the telephone in Dorm-1 when he cut the tip of his left finger on an exposed sharp edge protruding from the phone. Compl. at 3. Plaintiff's wound subsequently became infected and required antibiotics. Compl. Ex. A. Plaintiff alleges that the cut has led to a loss of use of his left hand as well as interference with his dialysis treatments. Compl. at 3.

Before the injury, Plaintiff reported the exposed metal to prison officials. Compl. at 3-4. Plaintiff admits that a "work order for immediate repair" was eventually submitted in response, but that the job still had not been completed at the time the Complaint was filed. Compl. at 5. Plaintiff filed an initial grievance but has not taken any further steps in the administrative grievance process because the grievance coordinator stated he would submit a work order. Compl. at 4; Opposition to Dismissal (ECF 22) at 2. When the work order was not completed, Plaintiff initiated this action by filing suit on August 3, 2018. (ECF 2).

## III. Discussion

### a. Legal Standard

A Rule 12(b)(6) motion to dismiss must be granted where the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, the Court is limited to the complaint's factual allegations, documents attached to the complaint, matters of judicial notice, and documents which Plaintiff relied on in filing the complaint. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the complaint is to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, this does not exempt the plaintiff from "compliance with relevant rules of procedural and substantive law." *Purisima v. Astrue*, No. 12-CV-3528 (WHP) (JLC), 2012 WL 5519295, at *2 (S.D.N.Y. Nov. 14, 2012) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### b. Claims Against Securus

Securus argues that it should not be held liable because (1) Plaintiff has failed to exhaust all administrative remedies, (2) Securus is not a state actor, and (3) Plaintiff's alleged injury does not rise to the level of actionable conduct for §1983 claims.

1. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that prisoners must exhaust all available administrative remedies prior to instituting a §1983 suit in regards to "prison conditions." 42 U.S.C. §1997e (a). "Prison conditions" include "the environment in which prisoners live," such as overcrowding or deficiencies in the prison building's construction. *Booth v. Churner*, 206 F.3d 289, 294 (3d Cir. 2000). Plaintiff's claim of dangerously improper maintenance of a prison phone would fall within this category.

Notwithstanding the exhaustion requirement, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). As a result, failure to exhaust may not be the basis for a Rule 12(b)(6) dismissal unless "failure to exhaust is apparent from the face of the complaint." *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003); s*ee also Fernandini v. United States*, No. 15-CV-3843 (GHW), 2017 WL 3208587, at *6 (S.D.N.Y. July 26, 2017) (refusing to assume lack of exhaustion where complaint

was unclear about entirety of administrative steps taken). Where the parties have submitted evidence outside the complaint in support of the exhaustion issue, the Court may consider such evidence; however, doing so would convert the 12(b)(6) motion to a summary judgment motion under Federal Rule of Civil Procedure 56. *Id.* at 250.

As a prisoner in the New York City Department of Corrections, Plaintiff was required to comply with the Inmate Grievance Resolution Program ("IGRP"). *See Girodes v. City of New York,* No. 17-CV-6789 (RWS), 2018 WL 3597519, at *3 (S.D.N.Y. July 26, 2018); *Knight v. Mun. Corp.*, No. 14-CV-3783 (PAE) (JCF), 2016 WL 4030632, at *4 (S.D.N.Y. July 26, 2016); ECF No. 33 at 14-15. The IGRP lays out a multi-step process for inmates: (1) file an informal complaint with the IGRP, which will result in a decision within five days; (2) appeal the IGRP decision to the Inmate Grievance Resolution Committee; (3) appeal the Committee's decision to the prison's Commanding Officer; and (4) appeal the Officer's decision to the Central Office Review Committee. (ECF No. 33 at 14).[1]

Plaintiff's attachment to the operative complaint shows that he submitted a complaint with the IGRP, initiating the IGRP process. Compl. at 8. The complaint further states that Plaintiff was "still waiting on a response," and thus Plaintiff concluded that there was "no need for an appeal." Compl. at 4. It appears to be undisputed that Plaintiff did not pursue any procedures beyond step one of the IGRP process. As a result, Securus argues, Plaintiff's failure to exhaust his administrative remedies should bar his current suit. (ECF 16 at 3). Plaintiff in turn

---

[1] Although the policy document is extrinsic evidence outside the complaint, the Court takes judicial notice of this government document, as it is referenced by both parties, found on the City of New York's website (http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf) and has been cited to by many other courts in this District. *See, e.g., Girodes,* 2018 WL 3597519, at *3; *Knight,* 2016 WL 4030632, at *4; *Myers v. City of New York*, No. 11-CV-8525 (PAE), 2012 WL 3776707, at *4 (S.D.N.Y. Aug. 29, 2012).

contends that no further appeal was necessary because prison officials ultimately resolved his grievance by submitting a work order. (ECF 22 at 2; ECF 33 at 4). Therefore, this is not a factual dispute about whether Plaintiff satisfied every step of the IGRP, but rather a legal dispute over whether Plaintiff was required to continue filing appeals despite receiving a favorable resolution at step one.

Construing the complaint in the most favorable light for Plaintiff, Plaintiff's grievance resulted in the submission of a work order, negating any need for him to file an appeal. In such a case, Plaintiff has exhausted his administrative remedies and therefore relying on the IGRP again would be futile, since it had already issued a decision in his favor. *See Antrobus v. Dep't of Corr.*, No. 07-CV-2076 (JSR), 2009 WL 773277, at *4 (S.D.N.Y. Mar. 24, 2009) (finding exhaustion because IGRP has no procedure for appealing a favorable decision). Accordingly, Plaintiff has sufficiently exhausted his administrative remedies prior to filing suit in this court.[2]

2. State Actor

To plead an actionable §1983 claim, Plaintiff must show that Securus acted "under color of state law" in a manner that deprived him of his constitutional rights. *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir. 1990). Securus is not a City entity but is a private corporation that contracts with the City of New York to provide telephone services to correctional facilities. (ECF 16 at 2; ECF 22 at 7). As a private company, Securus would only be liable as an actor under state law if it acted "as joint participants in government enterprises designed to deprive private citizens of their constitutional rights." *Verdon v. Consol. Rail Corp.*, 828 F. Supp. 1129, 1137

---

[2] Even if it is later determined that there were additional administrative steps that Plaintiff should have taken, the Court can still rule on the pending motions to dismiss. *See* 42 U.S.C. §1997e (c)(2) (permitting dismissal for failure to state claim even if administrative remedies not exhausted); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (holding that exhaustion issue is not jurisdictional).

(S.D.N.Y. 1993); s*ee also NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (limiting §1983 liability for private actors to those who "represent [a state] in some capacity").

Plaintiff fails to allege any facts that would support classifying Securus as acting under color of state law. Courts have repeatedly found that contracting with a prison to provide telephone services does not on its own make a private company a state actor. *See, e.g., Riley v. O'Brien*, No. 16-11064 (LTS), 2016 WL 8679258, at *8 (D. Mass. Sept. 2, 2016); *Belton v. SecurusTech.net*, No. 13-CV-4850 (JS) (WDW), 2014 WL 524470, at *6 (E.D.N.Y. Feb. 7, 2014); *Iswed v. Caruso*, No. 1:08-CV-1118, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009). Nowhere in the complaint does Plaintiff allege that Securus worked jointly with a government entity to improperly maintain its phones. Plaintiff only offers the unsubstantiated allegation in his opposition and sur-reply[3] that Securus "collusively" works with the City to monitor and record prisoners' phone calls. (ECF 22 at 7; ECF 34 at 5). Even assuming *arguendo* that Plaintiff had alleged in the complaint facts supporting his allegation of a conspiracy to monitor prison phones, Plaintiff's complaint contains no claims of injury stemming from any recording or monitoring of Plaintiff's calls. Nor does Plaintiff allege any connection between recording of phone calls and failing to maintain the physical condition of prison phones. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) (requiring "nexus between the state and the *specific* conduct of which plaintiff complains"). Instead, Plaintiff's complaint is limited to the injury to his finger stemming from failure to remove a broken phone casing. Compl. at 5 (seeking relief due to lack of a phone repair policy and failure to properly inspect

---

[3] There are no allegations regarding recording of calls in Plaintiff's complaint.

phones). Accordingly, Plaintiff has not alleged the requisite facts to support his claim that Securus is a state actor.

3. Deliberate Indifference

The complaint on its face also does not allege sufficient facts to support a finding of "deliberate indifference," as necessary to support a §1983 claim. A claim of unconstitutional prison conditions under the Eighth Amendment[4] must allege (1) serious deprivation of the "minimal civilized measure of life's necessities" and (2) that the prison officials acted with "deliberate indifference" to the inmate's safety. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). From the outset, it is questionable whether a protruding piece of metal on a phone rises to the level of an unsafe living condition that violates "contemporary standards of decency." *See id*. (listing extreme temperatures and impediments to sleep as potentially violating the Eighth Amendment); *see also Williams v. Folino*, 664 Fed. Appx. 144, 146 n. 1 (3d Cir. 2016) (per curiam) (agreeing that "swinging cabinet doors with protruding metal" is not an unconstitutional confinement condition); *but see Beeks v. Reilly*, No. 07-CV-3865 (JFB) (ARL), 2008 WL 3930657, at *4 (E.D.N.Y. Aug. 21, 2008) (refusing to dismiss claim where prisoner injured by "metal object protruding from wall").

Even assuming the unfixed phone constituted an unreasonable hazard, Plaintiff's allegations indicate that the exposed metal was reported to prison officials, not to Securus. *See*

---

[4] This is analyzed under the Eighth Amendment because Plaintiff assumedly is serving time for a criminal offense. If Plaintiff were a pretrial detainee, however, the claim would be under the Fourteenth Amendment's Due Process, as there can be no punishment for someone not yet convicted. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Nonetheless, the analysis under the Eighth Amendment and Fourteenth Amendment would be largely the same. *Id*. at 30. (noting serious deprivation analysis identical). The only difference would be whether "deliberate indifference" is assessed subjectively or objectively, but in light of the absence of any allegation that Securus was responsible for the phones' maintenance, directly or indirectly, the distinction is meaningless in this case. *See id*. at 32.

Compl. at 3. Nowhere does Plaintiff allege that Securus is responsible for phone maintenance or that prison officials ever communicated with Securus on the conditions of its phones. Without any allegation that Securus knew or should have known of the phone's risk, Plaintiff cannot plead deliberate indifference.[5] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (requiring that defendant "know[] of and disregard[] an excessive risk to inmate health or safety"). Therefore, because Plaintiff failed to allege facts to support that Securus was a state actor or that Securus acted with deliberate indifference, Plaintiff's §1983 claims against Securus should be dismissed.

### c. **Claims Against the City of New York**

The City seeks dismissal on the grounds that (1) Plaintiff failed to exhaust all available remedies,[6] (2) Plaintiff failed to allege sufficient facts to support a claim of unconstitutional confinement, (3) Plaintiff failed to allege the existence of *Monell* liability, and (4) Plaintiff failed to allege specific acts committed by the named individual defendant.

#### 1. Eighth Amendment Violation

Plaintiff's §1983 claim against the City is slightly different from the claim against Securus because Plaintiff expressly alleges that the exposed metal hazard was "reported to D.O.C. on numerous occasions." Compl. at 3. As explained above, Plaintiff must allege a serious condition and a deliberate indifference to that condition. *See Schult*, 717 F.3d at 125. For a §1983 claim, "mere negligence will not suffice." *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 620 (2d

---

[5] In his sur-reply, Plaintiff alleges that the Department of Corrections told Securus of the broken phone. (ECF No. 34 at 8). However, that allegation is not present in the operative complaint or the proposed Second Amended Complaint. Even if Plaintiff had included that allegation, Plaintiff's §1983 claim against Securus must still be dismissed for failure to allege that Securus was acting under color of state law.

[6] The Court's discussion of exhaustion above applies equally to the claims against the City of New York.

Cir. 1996). Deliberate indifference requires (1) a substantial risk of serious harm and (2) disregard of the known risk. *Id*.

Accepting the complaint's allegations as true, Plaintiff adequately states a claim for unconstitutional prison conditions under the Eighth Amendment. Plaintiff alleges that the phone contained a sharp exposed piece of metal which tore his clothes, cut his hand, and led to the "incapacitation" of that hand. Compl. at 3. While Plaintiff may need to provide additional evidence of the hazard and of his injury if this case proceeds, that does not need to be addressed at the motion to dismiss stage. *See Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002). As to subjective intent, Plaintiff alleges that prior to his injury, this hazard was reported to his dorm officer and at Inmate Council meetings, but that no one took action to fix the situation until after Plaintiff injured himself. Compl. at 3, 5. Construing the allegations in the light most favorable to the *pro se* Plaintiff, the City was on notice through Plaintiff's repeated complaints that the phone contained a hazard that could seriously injure its users, and therefore, the officers' inaction could plausibly have constituted a knowing disregard of that risk.[7] Plaintiff's complaint should not be dismissed at this time for failure to allege an unconstitutional confinement claim.

---

[7] Although Plaintiff alleges that he repeatedly complained of the phone's hazards, he admits that the supervising prison officers submitted a "work order for immediate repair." Compl. at 5. Indeed, in Plaintiff's sur-reply, he admits further that a mere two days after filing a complaint with the grievance office, he was told the work order had been submitted. (ECF 33 at 4). Plaintiff does not allege how much time elapsed between his initial repeated informal complaints and the work order. It is similarly unknown whether the broken phone casing was of such a nature that delay in fixing the phone constituted deliberate indifference to Plaintiff's safety. Construing the complaint in the light most favorable to Plaintiff, however, I am satisfied that deliberate indifference has been adequately pleaded at this stage.

2. *Monell* Liability

Because Plaintiff is bringing suit against the City of New York, Plaintiff must establish *Monell* liability, showing that §1983 applies to the City. While a municipal government may not be sued under §1983 under the theory of *respondeat superior* for the actions of its employees, the City may be liable under §1983 when "execution of a government's policy or custom" causes the plaintiff's injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is not enough that the City negligently permitted a constitutional violation; Plaintiff must demonstrate that the actions of the City's policy makers were the "driving force" behind the constitutional violation. *Id*. Such policy may be in the form of an enacted regulation or ratification of the conduct by a "person with final policymaking authority." *Davis v. City of New York*, 75 Fed. Appx. 827, 829 (2d Cir. 2003). Here, Plaintiff admits that Defendants' failure to fix the phone within a reasonable time was not pursuant to any official policy. (ECF 10 at 5) (seeking relief because Defendants lacked a "policy concerning phone repair").

In the absence of a policy, Plaintiff must allege a custom to invoke *Monell* liability. Custom may be shown through circumstantial evidence that the unconstitutional behavior was "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992); *see also Monell*, 436 U.S. at 691 (suggesting that custom requires a showing that a practice is "permanent and well settled"). In contrast, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991)). In "limited circumstances," custom may be implied by a city's "fail[ure] to

10

train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of City Comm'rs v. Brown*, 520 U.S. 397, 407, 409 (1997); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (noting that failure to train claims are the "most tenuous" form of *Monell* liability).

Here, Plaintiff only alleges that the single phone in a particular building contained a protruding piece of metal. Compl. at 3. "Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.'" *White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015)). Notably, Plaintiff neither alleges that the prison had a recurring practice of neglecting complaints of physical hazards or that other phones were similarly posing a physical hazard. *Cf. Frith v. City of New York*, 203 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (dismissing claim against City for one-time denial of treatment where no policymaking official named and no particular policy identified); *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 218 (S.D.N.Y. 2014) (finding *Monell* liability where DOJ's report put County on notice of problem of inadequate treatment); *Toliver v. City of New York*, No. 10-CV-5806 (SHS) (JCF), 2012 WL 6849720, at *6 (S.D.N.Y. Sept. 25, 2012) (holding that City's failure to respond to Plaintiff's complaint was not akin to a conscious City policy or custom), *adopted by* 2013 WL 146088 (S.D.N.Y. Jan. 14, 2013); *Houston v. Nassau County*, No. 08-CV-0882 (JFB) (WDW), 2009 WL 605178, at *3 (E.D.N.Y. Mar. 6, 2009) (finding isolated incident of negligence insufficient to constitute a municipal policy). Here, Plaintiff's complaint concerns delay in

repairing one broken phone casing. As a result, Plaintiff has not pleaded a pervasive practice that could constitute a custom by the City.

Plaintiff also has not pleaded any allegations that would support a failure-to-train version of *Monell* liability. Failure to train can create liability for a city when it is "on actual or constructive notice that a particular omission in their training program" causes a constitutional violation. *Connick*, 563 U.S. at 61. Notwithstanding this high standard, Plaintiff's complaint includes zero allegations regarding training.

Plaintiff asserts, however, that the City should be liable for "[f]ailure to properly supervise," Compl. at 5, which has been treated by courts as a derivative of the failure-to-train claim. *See, e.g., Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). To be liable for a failure to supervise, Plaintiff must allege a "pattern of allegations or complaints about similar unconstitutional activity . . . that the municipality *consistently failed to investigate*." *Tieman,* 2015 WL 1379652, at *21. As noted above, Plaintiff only alleges conduct related to one phone, which led to a single injury. Plaintiff does not plead any facts regarding a pattern of physical hazards that were ignored. The complaint, likewise, contains no allegation that any policy-maker knew of complaints regarding this phone, let alone any practice of exposure to broken casings in general. Therefore, the City was not on notice of any pattern of unconstitutional exposure to physical hazards that required different supervision and/or training. *See Davis*, 75 Fed. Appx. at 829 (requiring repeated failures to investigate in order to suggest deliberate indifference). Further, Plaintiff does not plead any facts regarding the City's supervision or training of its prison officers, and Plaintiff's conclusory claim of insufficient supervision is not enough to survive a motion to dismiss. *See Gantt v. Ferrara,* No. 15-CV-7661 (KMK), 2017 WL

1192889, at *8 (S.D.N.Y. Mar. 29, 2017) (dismissing plaintiff's conclusory claim of failure to train and supervise its police officers); *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (dismissing claims against City where the failure to supervise claim was unsupported by facts and was based "solely on the conclusory assertions of the plaintiff").

Plaintiff's attempt to hold the City vicariously liable for the actions of the prison officers it employs is impermissible. *See Monell*, 463 U.S. at 690 ("a municipality cannot be held liable under §1983 on a *respondeat superior* theory"). Accordingly, because Plaintiff failed to allege any facts from which one could infer that any City policy or custom caused a deprivation of Plaintiff's constitutional rights, Plaintiff's claims against the City should be dismissed for failing to allege a *prima facie* case for *Monell* liability.

3. Warden's Liability

In addition to Securus and the City of New York, Plaintiff has named the Warden of North Infirmary Command as a defendant.[8] To the extent that the Warden is being sued in his official capacity, the claims would run against his employer, the City of New York, and thereby would be redundant. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 700 (S.D.N.Y. 2011) (dismissing official capacity claims because the City is the real party in interest).

If the Warden is being sued in his individual capacity, Plaintiff must allege specifically, as to the Warden, a "sufficiently serious" deprivation and "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.[9] A §1983 claim for damages, as here, may not be

---

[8] After filing his Amended Complaint, Plaintiff voluntarily dismissed his claims against the Mayor, the Department of Correction Commissioner, and the "Deputy Commissioner." (ECF 28). This leaves the Warden of the North Infirmary Command as the lone individual defendant.

[9] The Warden has not been served in this case and has not filed a motion to dismiss. Although the City asserts arguments for dismissal of the Warden, the City has not appeared on behalf of the Warden. Nevertheless, the Court has authority for *in forma pauperis* cases, such as this action, to dismiss *sua sponte* parts of an action for

13

based on *respondeat superior* liability but rather requires that Plaintiff plead that the Warden was "personally involved" in the alleged constitutional violation. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). Officials, such as the Warden, who occupy a supervisory role may only be liable if the official was either grossly negligent in "failing to act on information indicating that unconstitutional practices are taking place" or "created a policy or custom under which unconstitutional practices occurred." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). For Eighth Amendment claims regarding prison conditions against an official in his individual capacity, deliberate indifference requires "<u>actual knowledge</u> of risk by the prison official." *Cash v. County of Erie*, 654 F.3d 324, 341 n. 8 (2d Cir. 2011) (emphasis added).

      Here, the Warden is not mentioned anywhere in the Complaint other than being named as a defendant. Compl. at 2. Plaintiff fails to allege that the Warden was ever on notice of Plaintiff's complaints. Because none of Plaintiff's factual allegations involve the Warden, Plaintiff is attempting to hold the Warden liable for his employees' conduct or inaction. *See* Compl. at 5 (only alleging that Plaintiff reported the broken casing to a captain, an officer, and an Inmate Council meeting). Since Plaintiff fails to allege any facts concerning the Warden, the claims against the Warden should be dismissed. *See Richardson*, 347 F.3d at 435 (holding that "mere 'linkage in the prison chain of command' is insufficient to implicate . . . a prison superintendent in a §1983 claim").

---

frivolous claims or for failure to state a claim on which relief may be granted. 28 U.S.C. §1915(e)(2); *see also Qader v. Rushmore Recovery*, 667 F.Supp.2d 304, 306 (S.D.N.Y. 2009) (dismissing *sua sponte* two defendants who did not file a motion to dismiss).

d. **Motion to Amend**

Plaintiff filed a Second Amended Complaint on March 5, 2019 without obtaining leave from the Court. (ECF 27). Plaintiff attempts to justify the filing by incorrectly stating that leave is not required as long as the filing is made before Defendants' filing of an Answer. (ECF 37). Pursuant to Federal Rule of Civil Procedure 15, a party may file an amended complaint once without leave of the Court. All subsequent amendments to pleadings must be with the permission of the opposing party or the Court. Fed. R. Civ. P. 15(a)(1)-(2). Plaintiff here has already filed an amended complaint, ECF 10, requiring that any future amended complaints be filed only after receiving leave from the Court or Defendants. Plaintiff filed his Second Amended Complaint without seeking leave of either. Although the Court will therefore not consider the Second Amended Complaint as the operative complaint, the Court will construe the improperly-filed complaint as a motion to amend.

Although *pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated," *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002), amendment may be denied upon a finding of futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In his proposed Second Amended Complaint, Plaintiff does not add new factual allegations but merely seeks to add claims of gross[10] and general negligence. Negligence may be brought as a state law claim but is not a proper basis for a §1983 claim. *See Hayes*, 84 F.3d at

---

[10] Construing the proposed complaint in the most favorable light to Plaintiff, it is possible that Plaintiff's added claim of gross negligence is meant to be attributed to the Warden. In the proposed complaint, however, gross negligence is referenced only in the requested forms of relief. (ECF 27 at 5). Plaintiff still does not allege any facts regarding the Warden, let alone any facts tying the Warden to such conclusory claims of gross negligence. *Id*. at 3, 5. Accordingly, the proposed Second Amended Complaint would still result in dismissal of claims against the Warden. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (affirming that legal conclusions require supporting facts and are "not entitled to the assumption of truth").

620. Therefore, adding claims of negligence would not avoid dismissal of Plaintiff's existing federal law claims, rendering the proposed amendment futile.

Furthermore, Plaintiff's proposed Second Amended Complaint does not remedy any of the deficiencies in his claims, which have been outlined above. Plaintiff alleges no new facts regarding Securus's involvement with the City that would allow Securus to be considered a state actor. The proposed complaint adds no new facts regarding a policy or custom by the City. Nor are there any new facts regarding the Warden. As a result, the basis for dismissal against Securus, the City, and the Warden would still apply to the proposed Second Amended Complaint.

## IV. Conclusion

Because Plaintiff has failed to state a claim for which relief can be granted against the City, Securus, or the Warden, and because the proposed amended complaint would be futile, I recommend that all claims against the City, Securus, and the Warden should be dismissed with prejudice for failure to state a claim.[11]

## V. Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

---

[11] Plaintiff also generally requests that the Court consider any claims under state law. Compl. at 5. Because "it is 'not the district court's job to stitch together cognizable claims for relief,'" Plaintiff's undefined state law claims do not merit discussion and should not prevent dismissal of this action. See *Carbajal v. City and County of Denver*, 502 Fed. Appx. 715, 716 (10th Cir. 2012). Even if Plaintiff had listed specific state law claims in his complaint, I would recommend they be dismissed as there have been no articulated reasons to justify exercising pendent jurisdiction over those claims following dismissal of the §1983 claims, the basis here for federal jurisdiction. *See* 28 U.S.C. §1367 (c); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (agreeing that state law claims should be dismissed where all federal claims are dismissed before trial). Plaintiff's argument that any remaining non-§1983 claims could be heard via diversity jurisdiction is defeated by his admission that he is a New York citizen, similar to Defendant City of New York. (ECF 34 at 6).

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. The *pro se* Plaintiff's objections shall be filed with the Clerk of Court, *Pro Se* Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Such objections, and any responses to objections, shall be addressed to the Honorable Analisa Torres, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Plaintiff wishes to review, but does not have access to, unpublished cases cited herein that are reported on Westlaw, he should request copies from the Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

The Clerk is directed to mail a copy of this report & recommendation to Plaintiff at the address listed on the docket.

        *s/ Ona T. Wang*

Dated: June 13, 2019                                               **Ona T. Wang**
       New York, New York                      United States Magistrate Judge